MAINE CENTRAL RAILROAD
COMPANY, Plaintiff,

v.

The INTERSTATE COMMERCE
COMMISSION and George M.
Stafford, Defendants,

and

Amoskeag Company,
Intervenor-Defendant.

Civ. A. No. 75–157.

United States District Court,
District of Columbia.

Feb. 24, 1975.

Peter J. Nickles, Eugene D. Gulland, Washington, D. C., for plaintiff.

Hanford O'Hara, ICC, Washington, D. C., for defendants.

John E. Haley, Washington, D. C., Alan L. Lefkowitz, Boston, Mass., for defendant-intervenor.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This matter came before the Court on plaintiff's Motion for Preliminary Injunction, the pleadings and papers filed in support thereof, the responses of defendants and intervening defendant, and oral presentation of all parties at argument held on February 14, 1975.

The controversy centers on whether the defendants, Interstate Commerce Commission (hereinafter ICC) and its chairman, George Stafford, have complied with the requirements of the National Environmental Policy Act of 1969 (hereinafter NEPA), 42 U.S.C. § 4321 *et seq.*, with regard to agency proceedings thus far completed on Consolidated ICC Finance Docket Nos. 27620 and 27621. Agency hearings were scheduled to commence on Finance Docket No. 27620 on February 18, 1975. Plaintiff sought to enjoin holdings of any hearings on the docket numbers herein until such time as ICC established procedures conforming to the requirements of NEPA and developed and circulated a valid Draft Environmental Impact Statement in accordance with the lawful procedures.

## Findings of Fact

1. ICC Finance Docket No. 27620 is an ICC complaint against Amoskeag Company filed April 2, 1974, by plaintiff Maine Central Railroad Company (hereinafter Maine Central), charging that Amoskeag unlawfully possesses power to control Maine Central, in violation of Section 5(4) of the Interstate Commerce Act, 49 U.S.C. § 5(4).

2. ICC Finance Docket No. 27621, which was consolidated for all purposes with the above complaint, is an application filed April 23, 1974, by Amoskeag Company to acquire control of Maine Central pursuant to Section 5(2) of the Interstate Commerce Act, 49 U.S.C. § 5(2).

3. Since the adoption of its environmental rules presently codified at 49 C.F.R. 1100.250 (adopted January 14, 1972), the ICC has failed to develop or formally propose to the Council on Environmental Quality (CEQ), regulations or procedures governing the agency's methods for complying with the procedural provisions for the preparation of environmental impact statements established by NEPA, 42 U.S.C. § 4332, and the Guidelines of the CEQ, 40 C.F.R. § 1500 *et seq.*, (1974).

4. The possible environmental impact of the major federal action proposed in Consolidated ICC Finance Docket Nos. 27620 and 27621 has been the subject of substantial controversy among the public and private parties participating in the administrative proceedings. Concern is expressed over the relationship between the proceedings and the proposals of the private applicant, intervenor-defendant Amoskeag Company, for the implementation of operational changes involving

Maine Central, Bangor & Aroostook Railroad Company and the Boston & Maine Railroad Company, and the possible development of a New England Railroad System.

5. The Administrative Law Judge of defendant, ICC, in his Memorandum and Order following a prehearing conference served August 7, 1974, found that the matters raised in Consolidated ICC Finance Docket Nos. 27620 and 27621 constitute a proposal for major federal action which may significantly affect the quality of the human environment, thus requiring the issuance of a draft environmental impact statement.

6. The Administrative Law Judge in the August 7, 1974 Order, directed the private applicant, Amoskeag Company, to submit a proposed draft environmental impact statement first, and the other parties to submit such statement at a later date covering at least the environmental issues represented by their respective interests, all in accordance with 49 C.F.R. 1100.250.

7. The Administrative Law Judge further stated that the parties' proposals should not consider the possible environmental relationship of the proceedings to Amoskeag Company's proposals for operational changes affecting Maine Central, Bangor & Aroostook Railroad Company and the Boston & Maine Railroad Company which might be the subject matter of other proceedings before the ICC at a future date.

8. On November 20, 1974, the Commission issued a draft environmental impact statement covering the proceedings in Consolidated ICC Finance Docket Nos. 27620 and 27621, and said statement, with only minor modifications, adopted substantially, and largely in verbatim terms, the environmental analysis and factual material provided by the submission of the private applicant, Amoskeag Company.

9. On December 16, 1974, Maine Central, later joined by the State of Vermont, filed a petition with the ICC seeking dismissal of the application in Finance Docket No. 27621, or alternatively, a stay of the commencement of hearings pending issuance of a draft environmental impact statement which was compiled in accordance with lawful procedure.

10. In an order served January 10, 1975, the Interstate Commerce Commission-Division 3 found that the procedures followed by the Administrative Law Judge in many respects were inconsistent with the policies of the ICC and judicial decisions interpreting the requirements of NEPA, but denied the petition because the opportunity was available to file comments to the draft which would be given due consideration at the appropriate time, and further that on the merits, relief was not warranted.

11. Notice was served by the ICC on January 10, 1975, that the hearings would commence February 18, 1975, instead of January 20, 1975, as originally scheduled.

### Conclusions of Law

1. This Court has jurisdiction to grant injunctive relief, or relief in the nature of mandamus, under 28 U.S.C. §§ 1331 and 1361; 5 U.S.C. §§ 701–706; and 42 U.S.C. §§ 4321 *et seq.*, the National Environmental Policy Act of 1969, *Greene County Planning Board v. FPC,* 455 F.2d 412 (2d Cir.) *cert. denied,* 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972); *Harlem Valley Transportation Assn. v. Stafford,* 500 F.2d 328, 334 (2d Cir. 1974); *Jones v. District of Columbia Redevelopment Land Agency,* 162 U.S. App.D.C. 366, 499 F.2d 502, 511–12 (1974); *National Helium Corp. v. Morton,* 455 F.2d 650, 654–55 (10th Cir. 1971). The Court thus has jurisdiction to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–02.

2. Plaintiff has standing in its own right and as a "private attorney general" to enforce the mandates of the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321 et seq., *Harlem Valley Transportation Assn. v. Stafford, supra; Sierra Club v. Morton,* 405 U.S. 727, 737, 740, 92 S.Ct. 1361, 1367, 1368,

31 L.Ed.2d 636, 644, 646 (1972); *National Helium Corp. v. Morton*, 455 F.2d at 654–55; *Scanwell Laboratories v. Schaffer*, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970).

■ 3. The Interstate Commerce Commission's procedures for preparing draft and final environmental impact statements, 49 C.F.R. §§ 1100.250 *et seq.*, violate the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321 *et seq.*, and do not conform with the Guidelines of the CEQ, 40 C.F.R. §§ 1500 *et seq.*, in that they do not provide for the preparation of draft environmental impact statements prior to public hearings, they call upon private applicants to provide the analysis and factual basis for the Commission's impact statements, and they do not provide a procedural foundation for the Commission's preparation of its own, independent and comprehensive, draft environmental impact statement to be available for informed public comment prior to required public hearings.

■ 4. The Interstate Commerce Commission has unlawfully failed to promulgate valid regulations or procedures for the preparation of environmental impact statements, as required by 42 U.S.C. § 4332 and recommended in 40 C.F.R. § 1500 *et seq.*, despite the clear mandate of judicial decisions. *Harlem Valley Transportation Assn. v. Stafford*, 500 F.2d 328 (2d Cir. 1974); and *Greene County Planning Board v. FPC*, 455 F.2d 412 (2d Cir.), *cert. denied*, 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972).

5. Despite the possibly important and controversial issues relating to the scope and extent of environmental impact raised in Consolidated ICC Finance Docket Nos. 27620 and 27621, the Administrative Law Judge of the Commission directed that the parties submit a "proposed draft environmental impact statement" limited in scope. The Commission then issued a draft impact statement which, in its substantial adoption in often verbatim terms of Amoskeag Company's statement, was seemingly devoid of the Commission's own compre-

hensive and independent analysis in violation of NEPA, 42 U.S.C. § 4332 and contrary to the CEQ Guidelines, 40 C.F.R. §§ 1500 *et seq.* Impact statements developed in this manner would not provide, as NEPA requires, for full and fair agency development and consideration of the matters that are to be included in impact statements nor would it secure informed comments from interested public or private persons that, together with the draft impact statement, "shall accompany the proposal through the existing agency review processes" of which a public hearing is a part.

■ 6. For the Interstate Commerce Commission to proceed with preparation of a final impact statement based on comments to the draft, and to proceed with public hearings required under the Interstate Commerce Act on ICC Finance Docket Nos. 27260 and 27261 on the basis of a draft environmental impact statement prepared under such improper procedures violates NEPA, 42 U.S.C. §§ 4321 *et seq.*, and is contrary to the CEQ Guidelines, 40 C.F.R. §§ 1500 *et seq.*

7. The public interest and the balancing of harms warrant injunctive relief to prevent the ongoing violation of the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq., *United States v. City and County of San Francisco*, 310 U.S. 16, 30–32, 60 S.Ct. 749, 756–757, 84 L.Ed. 1050, 1060–1061 (1940); *Jones v. District of Columbia Redevelopment Land Agency*, 162 U.S.App.D.C. 366, 499 F.2d 502, 512 (1974).

### ORDER

Having considered plaintiff's Motion for Preliminary Injunction, the pleadings and papers filed in support thereof, the responses of defendant and the intervening defendant, and the oral presentation of all parties at argument held at February 14, 1975, it is in accordance with the Memorandum Opinion attached hereto, this 21st day of February 1975,

ORDERED AND ADJUDGED that defendants, their employees, agents and

attorneys are hereby preliminarily enjoined, pending trial herein, from holding hearings on the merits in Consolidated ICC Finance Docket Nos. 27620 and 27621, unless and until the defendants shall have

(1) established procedures for the preparation of an environmental impact statement complying with the requirements of the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4332(2)(B) and 4332(2)(C), and

(2) prepared and circulated and obtained the comments of appropriate public and private entities on a valid draft environmental impact statement compiled in accordance with such lawful procedures for the preparation of an environmental impact statement.