**MAINE CENTRAL RAILROAD COMPANY, Plaintiff,**

v.

**INTERSTATE COMMERCE COMMISSION et al., Defendants,**

**and**

**Amoskeag Company, Intervenor-Defendant.**

**Civ. A. No. 75–157.**

United States District Court, District of Columbia.

Nov. 23, 1977.

Peter J. Nickles, Washington, D. C., for plaintiff.

Jeffrey A. Knoll, I.C.C., Washington, D. C., for I. C. C.

John E. Haley, Peter Vaghi, Sidley & Austin, Washington, D. C., for Amoskeag Co.

## MEMORANDUM AND ORDER

JUNE L. GREEN, District Judge.

Plaintiff has filed a motion to require compliance with the Court's previous judgment in this action entered on February 21, 1975. In that order, the Court enjoined defendant Interstate Commerce Commission (ICC) from holding any administrative hearings on the merits of defendant-intervenor Amoskeag's application[1] until the ICC had (1) promulgated valid regulations for the implementation of the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321, et seq., and (2) prepared, circulated and obtained public comment on a draft environmental impact statement compiled in accordance with valid NEPA regulations. *Maine Central Railroad Company v. ICC*, 410 F.Supp. 653 (D.D.C.1975).

This is the fourth time that these parties have sought a ruling from the Court on this matter. In a previous order entered February 14, 1977 and clarified on March 24, 1977, the Court found, and plaintiff admitted, that valid environmental regulations had been established, but that the ICC had failed to comply with both the letter and the spirit of those regulations and this Court's order when it waived the requirement that Amoskeag submit a detailed environmental impact report (DEIR) for the ICC staff's use in preparing a draft environmental impact statement (DEIS).

Pursuant to that order, the ICC ordered Amoskeag to prepare and file a DEIR which was completed May 16, 1977. Plaintiff then moved to strike. Plaintiff's motion was denied and the ICC staff prepared a revised DEIS.

Plaintiff contends that the ICC has not fulfilled the terms of the injunction in that the DEIS is superficial and consists of the blanket acceptance of Amoskeag's conclusory legal arguments contained in the DEIR that no environmental impact is involved in its proposals. Additionally, plaintiff alleges that the ICC is remiss in failing to seek this Court's determination that the outstanding injunction has been satisfied prior to holding its hearings.[2]

In their respective memoranda in opposition to plaintiff's motion, the ICC and Amoskeag submit that all conditions of the Court's judgment have been met; that the ICC has in good faith complied with the letter and the spirit of its regulations; that it was not a requirement that they return to this Court upon compliance; and that plaintiff is seeking merely to further delay the start of the ICC hearings. Furthermore, they contend that the proper forum for plaintiff to attack the adequacy of the DEIR is at the hearing before the ICC, and not in this Court at this time.

The Court is concerned that plaintiff's rights are protected and the intent behind NEPA preserved. It has carefully considered the various papers submitted by all parties and the entire record herein. Based thereon, the Court concludes that its prior orders have been satisfied and there is nothing further before this Court. Accordingly, plaintiff's motion is denied.

In so ruling, the Court is mindful of the scope of this action as originally defined by plaintiff in its complaint and motion for injunctive relief. All that is presently before this Court is whether the revised DEIS recently prepared and circulated by the ICC staff following Amoskeag's submission of a DEIR constitutes compliance with the Court's prior order, thereby permitting the administrative hearings on the merits of Amoskeag's application to proceed without further delay.

---

1. Amoskeag in its initial application sought an extension of control of plaintiff Maine Central through the purchase of additional shares of its stock or by other lawful means. On June 21, 1976, the Administrative Law Judge narrowed the scope of the application to one merely seeking permission to vote directly the minority interest (approximately 35%) now held by Amoskeag and voted by an independent institutional trustee.

2. Said hearings, the Court understands, are currently scheduled for early December.

Additionally, there are limitations as to the Court's role in this matter which have recently been enunciated by the Supreme Court in *Kleppe v. Sierra Club*, 427 U.S. 390, 410 n.21, 96 S.Ct. 2718, 2731, 49 L.Ed.2d 576 (1976):

> Neither the statute nor its legislative history contemplates that a court should substitute its judgment for that of the agency as to the environmental consequences of its actions. [Citation omitted]. The only role for a court is to insure that the agency has taken a "hard look" at environmental consequences; it cannot "interject itself within the area of discretion of the executive as to the choice of the action to be taken."

Accordingly, the Court makes the following findings as a basis for its denial of plaintiff's motion:

1. Amoskeag properly relied on the interpretation of the Administrative Law Judge and ICC staff as to the scope of its application and consulted with them in preparing its DEIR.[3] 49 C.F.R. § 1108.12. Therefore, the DEIS, prepared subsequent to Amoskeag's submission of its DEIR and premised on the same staff interpretation of the scope of the current application, is likewise sufficient to constitute compliance with this Court's order.

2. As presently defined, Amoskeag's application cannot be considered part of a "segmented" plan to consolidate these railroads. If granted, the power to vote a minority stock interest will not by itself enable Amoskeag to effect any operational changes with respect to plaintiff. The instant situation is hardly analogous to that in *Greene County Planning Board v. FPC*, 455 F.2d 412 (2d Cir.), *cert. denied*, 409 U.S. 489, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972), where petitioners sought licensing authority from the Federal Power Commission (FPC) to construct three transmission lines as part of a comprehensive proposal for a pumped storage power project. The Court held there that the FPC in approving two of the three lines must consider the possible environmental impact of all three and could not "segment out" its environmental consideration of the final line.

Although it is true, as plaintiff points out, that Amoskeag's preliminary case outline goes beyond a request for authority to vote its minority interest and discusses eventual consolidation of the railroads, it also devoted 14 pages of supplementary information in its DEIR to the environmental impact of such long range plans if they were to materialize. The sufficiency of this latter information, if the scope of the application were broader, is not before the Court. The Court trusts that the ICC will act in good faith in requiring the necessary environmental impact analysis at the appropriate time in the appropriate proceedings *if* Amoskeag does move toward consolidation or if the Commission determines to broaden the scope of the current application.[4]

3. While the Court's prior orders did not specifically require the parties to seek a ruling that defendants' actions constituted compliance therewith before proceeding with the administrative hearings, such a

---

3. Plaintiff contends that Amoskeag cannot rely on this interpretation as a basis for the DEIR since the narrowed scope of the application was reflected in the November 24, 1976 DEIS which this Court found to be inadequate. However, the basis for this finding was the ICC's waiver of the required DEIR and not the validity of the Administrative Law Judge's ruling. This is not a matter for the Court's consideration.

4. Matters dealing with the final EIS are not before the Court. As the Court understands it, however, the final EIS will "be prepared early enough to be part of the decisionmaking process to which it relates," 49 C.F.R. § 1108.14, and "will be available to the public at least fifteen (15) days prior to that portion of the oral hearing relating to the impact statement . . . ." 49 C.F.R. 1108.16(b). Plaintiff will be permitted to cross-examine witnesses, including the ICC's environmental affairs staff, concerning the scope of the proposed action. 49 C.F.R. § 1108.17(b). If it should develop in the course of the hearings that the Commission's view of the scope of the current application is broader than that envisioned by the staff, then, as has been recognized in the DEIS, another revised DEIS may have to be issued. This would presumably also entail preparation of a revised DEIR by Amoskeag.

procedure might normally be contemplated. Rule 60(b) F.R.Civ.P. However, the fact of compliance is what the Court, and presumably all parties want most. The Court having found that defendants' actions constitute compliance with its prior orders, there is nothing further for this Court to consider, and the administrative hearings should be held without further delay.

For these reasons, it is by the Court this 23rd day of November 1977,

ORDERED that plaintiff's motion to require compliance with the Court's previous judgment be, and hereby is, denied.